THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| RICHARD DREW RHODES,<br><br>Petitioner,<br><br>v.<br><br>STATE OF UTAH,[1]<br><br>Respondent. | **MEMORANDUM DECISION & ORDER DISMISSING HABEAS PETITION**<br><br>Case No. 1:21-CV-165-RJS<br><br>Chief District Judge Robert J. Shelby |

Petitioner, Richard Drew Rhodes, requests federal habeas relief regarding his Utah state convictions. *See* 28 U.S.C.S. § 2254(a) (2023). Under the Antiterrorism and Effective Death Penalty Act of 1996, (AEDPA) federal district courts "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *Id*. Having carefully considered germane documents and law, the Court agrees with Respondent, (ECF No. 14), that this petition is inexcusably untimely. *See* 28 U.S.C.S. § 2244(d)(1). The Petition is therefore dismissed with prejudice.

## I. RELEVANT TIMELINE

- 12/19/16    Petitioner was sentenced to four terms of twenty-five years to life (sodomy on a child) and one term of fifteen years to life (aggravated sexual abuse of a child). (ECF No. 14-4, at 2-3 (Utah dist. ct. case no. 151900727).)

- 8/22/19    The Utah Court of Appeals affirmed the convictions on direct appeal. *State v. Rhodes*, 2019 UT App 143.

---

[1] Petitioner must clearly name his custodian (warden or ultimate supervisor of imprisonment facility) as the respondent. R. 2, Rs. Governing § 2254 Cases in the U.S. Dist. Cts. The Court therefore assumes Petitioner means Respondent is Central Utah Correctional Facility Warden Robert Powell.

1

- 1/7/20     The Utah Supreme Court denied certiorari review. *State v. Rhodes*, 458 P.3d 748 (Utah 2020) (table).

- 4/7/2020     Expiration of the deadline to file petition for certiorari to United States Supreme Court. *See* Sup. Ct. R. 13.1 (giving 90 days to file "petition for a writ of certiorari to review a judgment in any case . . . entered by a state court of last resort"), signaling conclusion of direct review and commencement of the statute of limitations under *see* 28 U.S.C.S. 2244(d)(1).

- 2/18/21[2]     Petitioner files his state post-conviction petition. (ECF No. 14-8, at 1 (state dist. ct. case no. 201900912).)

- 5/11/21     The state district court dismisses the state post-conviction petition because all of Petitioner's claims were precluded under state law. (ECF No. 14-10, at 8.)

- 6/11/21     Expiration of the deadline to file a notice of appeal for the state post-conviction petition. *See* Utah R. App. P. 4(a). Federal filing period resumes.

- 7/29/21     Expiration of the AEDPA deadline to file a petition for habeas relief.

- 11/30/21[3]     Petitioner places his federal petition in the prison mail system. (ECF No. 2, at 15.)

- 7/27/22     Respondent files a motion to dismiss, arguing the Petition is inexcusably untimely. (ECF No. 10.)

- 6/4/22     Petitioner files an opposition to the motion to dismiss. (ECF No. 17-1.)

## II. ANALYSIS

Federal statute sets a one-year period of limitation to file a habeas-corpus petition. 28 U.S.C.S. § 2244(d)(1) (2023). The period runs from "the date on which the judgment became

---

[2] A defective post-conviction petition was docketed in the state courts on February 18, 2021. (ECF No 14-10, at 3.) An amended petition dated May 1, 2021 was docketed on May 5, 2021. *Id.* Petitioner has not indicated when he placed the earlier petition in the prison mailing system. For purposes of this analysis this court will deem the federal statute of limitations to have been tolled as of the filing of the earlier petition. *See* 28. U.S.C.S. 2244(d)(2); Utah R. Civ. P. (6)(e)(2) ("Papers filed or served by an inmate are timely filed or served if they are deposited in the institution's internal mail system on or before the last day for filing or service."). As will be shown below, Petitioner missed his federal filing deadline by four months. Therefore, even if Petitioner had supplied information necessary for him to claim the benefit of Utah's prison mailbox rule, the additional time is unlikely to be consequential.

[3] Petitioner declares that he placed the Petition in the prison's internal mail system on November 30, 2021. The petition was docketed on December 13, 2021, but the envelopes appear to be post marked on December 5, 2021. For the sake of this Order, therefore, the court deems the Petition filed as of November 30, 2021. *See, Houston v. Lack*, 487 U.S. 266, 276 (1988) ("notice of appeal was filed at the time petitioner delivered it to the prison authorities for forwarding to the court clerk.").

final by the conclusion of direct review or the expiration of the time for seeking such review." *Id*. § 2244(d)(1)(A). So, when the time expired for Petitioner to seek certiorari review in the United States Supreme Court on April 7, 2020, the one-year limitation period began running.

### A. STATUTORY TOLLING

The limitation period "is tolled or suspended during the pendency of a state application for post-conviction relief properly filed during the limitations period." *May v. Workman*, 339 F.3d 1236, 1237 (10th Cir. 2003) (citing 28 U.S.C.S. § 2244(d)(2) (2023)). A "state postconviction application 'remains pending' 'until the application has achieved final resolution through the State's postconviction procedures.'" *Lawrence v. Florida*, 549 U.S. 327, 332 (2007) (quoting *Carey v. Saffold,* 536 U.S. 214, 220 (2002)); *see Fisher v. Raemisch*, 762 F.3d 1030, 1032 (10th Cir. 2014). Once the post-conviction case ends in state court, the one-year limitation period resumes.

Tolling, however, does not revive the limitations period--*i.e.*, restart the clock at zero. It serves only to suspend a clock that has not already run. *See Fisher v. Gibson*, 262 F.3d 1135, 1142-43 (10th Cir. 2001); *see also Laws v. LaMarque*, 351 F.3d 919, 922 (9th Cir. 2003). Thus, any time between when a petitioner's direct appeal becomes final and when he files his petition for state post-conviction relief is counted in the limitations period. And, any time between when the state post-conviction action concludes and before a petitioner's habeas petition is filed also counts toward the limitations period because state-collateral review only pauses the one-year period; it does not delay its start. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000), ("[P]roper calculation of Section 2244(d)(2)'s tolling provision excludes time during which properly filed state relief applications are pending but does not reset the date from which the one-year statute of limitations begins to run.").

In other words, time elapsing after a petitioner's conviction becomes final on direct review, but before a state post-conviction petition is filed, and time after final disposition of the petitioner's post-conviction proceedings, but before the filing of the federal habeas petition, *aggregate* to count against the one-year-limitation period. *See Sutton v. Cain*, 722 F.3d 312, 316 n.6 (5th Cir. 2013) ("To calculate when the limitations period has run, we aggregate the time between (i) the date the petitioner's conviction became 'final' and the date the petitioner filed his state [post-conviction] application; and (ii) the date the state [post-conviction] process concluded and the date the petitioner filed his federal habeas petition.").

From April 7, 2020 (the date upon which Petitioner's direct appeal became final), the limitation period ran 317 days, until, on or around February 18, 2021, when Petitioner filed his (ultimately unsuccessful) state post-conviction application and tolled the period. Forty-eight days remained at that point. The state post-conviction petition was dismissed on May 11, 2021 and the action concluded on June 11, 2021, the date upon which the deadline to file a notice of appeal expired. *See* ECF No. 14-10, at 8; Utah R. App. P. 4(a). The AEDPA period began running again on that day and expired on or around July 29, 2021.

Petitioner placed the Petition in the prison mailing system on November 30, 2021—approximately 124 days too late. As a result, Petitioner has no ground for statutory tolling.

### B. EQUITABLE TOLLING AND EXCEPTION

Plaintiff argues for equitable tolling, both on the basis of extraordinary circumstances and actual innocence.[4] "Equitable tolling is 'a judicially-crafted stopping of the clock' that" is applied "'only in rare and exceptional circumstances.'" *United States v. Barger*, 784 F. App'x 605, 607

---

[4] Because Petitioner is *pro se*, his pleadings must be construed liberally. *Garrett v. Selby, Connor, Maddux, & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). However, this requirement does not obligate the Court to form arguments for him or excuse compliance with procedural rules. *Id.*

4

(10th Cir. 2019) (unpublished) (quoting *Fisher*, 262 F.3d at 1143); *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000)). Equitable tolling "will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time." *Calderon v. U.S. Dist. Ct.*, 128 F.3d 1283, 1288 (9th Cir. 1997) (citation omitted). Examples warranting equitable tolling are "'when an adversary's conduct . . . prevents a prisoner from timely filing, or when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period.'" *Stanley v. McKune*, 133 F. App'x 479, 480 (10th Cir. 2005) (quoting *Gibson*, 232 F.3d at 808 (citation omitted)). An inmate seeking equitable tolling based on limited access to a law library in the wake of the COVID-19 pandemic must show that he was pursuing his rights diligently throughout the period of limitations and that COVID-19 specifically prevented his from filing his motion. *See Donald v. Pruitt*, 853 Fed. Appx. 230, 234 (10th Cir. April 19, 2021) (citing *United States v. Henry*, No. 2:17-CR-00180, 2020 U.S. Dist. LEXIS 234135, 2020 WL 7332657, at *4 (W.D. Pa. Dec. 14, 2020) ("The bottom line is that the COVID-19 pandemic does not automatically warrant equitable tolling for any petitioner who seeks it on that basis. The petitioner must establish that he was pursuing his rights diligently and that the COVID-19 pandemic specifically prevented him from filing his motion.")).

Meanwhile, "equitable exception" refers to "actual innocence" that "'serves as a gateway through which a petitioner may pass' . . . to overcome . . . his failure to abide by the federal statute of limitations in order to have his . . . claim[s] heard on the merits." *Fontenot v. Crow*, 4 F.4th 982, 1030 (10th Cir. 2021) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)).

On both grounds, Petitioner "has the burden" of showing equitable tolling or an equitable exception applies. *Lovato v. Suthers,* 42 F. App'x 400, 402 (10th Cir. 2002) (unpublished).

5

### 1. Extraordinary Circumstances

Petitioner's arguments, liberally construed, suggest that the passing and expiration of the federal period of limitation as qualifying for equitable tolling. Petitioner argues that his late filing here should be excused due to the cumulative effects of the COVID-19 pandemic, including prison lockdowns and understaffing in both the prison law library and U.S. postal system. In response to Respondent's motion to dismiss for untimeliness, Petitioner argues

> I was on lock down, very simple to prove that. Watch the news. For months on the T.V. Furthermore, the mail system out there is understaffed and way behind. That has even been on the news multiple times as recent as last week. And – law library has been understaffed since middle 2019 due to Covid which in and of itself is self explanatory [sic] enough – Covid – it kind of screwed everything up.

(ECF No. 17, at 1.) Petitioner later argued to the court

> I believe with everything I have already sent there is far more than a little merit and cause [sic] of my Petition. I am not educated in the 1-2-3's and A-B-C's of the "law" so I'm unable to point out everything that could or should be pointed out against my Prosecutor, Judge and All [sic] of my previous attorney's negligence.

(ECF No. 20, at 1.) Petitioner supplies no further evidence or analysis in support of his opposition to the motion to dismiss for lack of timeliness.

### a. Timeline of facts relevant to equitable tolling

- 12/19/16   Petitioner was sentenced to one term of fifteen years to life (aggravated sexual abuse of a child), and four terms of twenty-five years to life (sodomy on a child). (ECF No. 14-4, at 2-3 (state dist. ct. case no. 151900727).)

- 1/7/20   The Utah Supreme Court denied certiorari review on direct appeal. *State v. Williams*, 458 P.3d 748 (Utah 2020) (table).

- 4/7/2020   Date upon which the deadline passed to file certiorari petition with United States Supreme Court. *See* Sup. Ct. R. 13.1 (giving 90 days to file "petition for a writ of certiorari to review a judgment in any case . . . entered by a state court of last resort"), signaling conclusion of direct review.

- 2/18/21     Petitioner files his state post-conviction petition. (ECF No. 14-8, at 1 (state dist. ct. case no. 201900912)).

- 5/11/21     The state district court dismisses the state post-conviction petition because all of Petitioner's claims were precluded under state law. (ECF No. 14-10, at 8.)

- 6/11/21     Date upon which the deadline passed to file an appeal with the Utah Court of Appeals Utah Court of Appeals. *See* Utah R. App. P. 4(a).

- 7/29/21     Date upon which the deadline passed to file federal petition under the AEDPA.

- 11/30/21     Petitioner places his federal petition in the prison mail system. (ECF No. 2, at 15.)

### b. Discussion

Petitioner contends that the general repercussions of the COVID-19 pandemic excuse his untimely filing. However, Petitioner neglects to supply evidence that he diligently pursued his rights throughout the limitations period, nor detail the specific circumstances that interfered with the preparation and filing of his Petition. Petitioner's conviction became final on April 7, 2020, shortly after the onset of the COVID-19 pandemic. Petitioner had one year from that date to file his federal petition. During that time, Petitioner filed his state post-conviction petition on February 18, 2021, tolling the federal period with approximately 48 days remaining. Petitioner's state post-conviction petition was dismissed on May 11, 2021. The remainder of Petitioner's federal filing period resumed when his time to file a notice of appeal in the state courts expired on June 11, 2021. Petitioner's time to file a federal petition expired 48 days later, on or around July 29, 2021. Petitioner offers no explanation for why he was able to successfully prepare and file his state post-conviction petition by February 18, 2021, but unable to prepare and file a federal petition before July 29, 2021. Accordingly, Petitioner fails to meet his burden to show that he diligently pursued his right to file a petition under the AEDPA, nor that specific

circumstances presented by the COVID-19 pandemic prevented him from filing a timely petition.

### 2. Actual Innocence

Liberally construed, Petitioner's arguments also suggest that his lateness should be excused because he is actually innocent of the five crimes for which he was convicted. Thus, Petitioner "seeks an equitable exception," based on actual innocence. *See Fontenot*, 4 F.4th at 1034 (quotation marks and citation omitted). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "An actual innocence claim must be based on more than the petitioner's speculations and conjectures." *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021). To validly "claim actual innocence a petitioner must present new, reliable evidence that was not presented at [or available for] trial. Such evidence typically consists of 'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.'" *Rose v. Newton-Embry*, 194 F. App'x 500, 502 (10th Cir. 2006) (unpublished) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). Further, this evidence must "affirmatively demonstrate . . . innocence," not just "undermine the finding of guilt." *Ballinger v. Kerby*, 3 F.3d 1371, 1375 (1993). ("An actual innocence claim must be based on more than the petitioner's speculations and conjectures."). After presenting such evidence, a petitioner must then "show that in light of the new evidence, 'no reasonable juror would have found the defendant guilty.'" *See Rose*, 194 F. App'x at 502 (quoting *Schlup*, 513 U.S. at 329). Such evidence is so very rare that "in virtually every case, the allegation of actual innocence has been summarily rejected." *Schlup*, 513 U.S. at 324. "Simply maintaining one's innocence, or even casting some doubt on witness credibility, does not necessarily satisfy th[e demanding *Schlup*] standard" for new evidence. *Frost v. Pryor*, 749 F.3d 1212, 1232 (10th Cir. 2014); *see*

*also Stafford v. Saffle*, 34 F.3d 1557, 1561 (10th Cir. 1994) (stating "corroborating evidence, impeaching evidence, or evidence merely raising some suspicion or doubt of . . . guilt" is not "persuasive evidence of 'actual innocence'").

Petitioner neglects to provide specific analysis addressing the actual innocence standard. But even extending Petitioner the benefit of liberal construction, nothing in his arguments supports a claim of actual innocence. Petitioner's rehashing of the evidence at trial and conclusory protestations of innocence fall far short of the type of reliable evidence necessary to establish actual innocence.

The "new" evidence Petitioner presents is primarily impeachment evidence and character evidence which was available at the time of trial. For example, Petitioner suggests that a witness could have been called to refute the victim's report that Petitioner had exposed him to pornography by using a video game console. (ECF No. 2, at 19). Petitioner argues that this was impossible because he did not own such a video game console. Ironically, Petitioner proposes to prove his lack of ownership of the game console by submitting evidence that a friend had rented one on his behalf. (ECF No. 2, at 19.) First, there can be no argument that evidence pertaining to Petitioner's access to a game console was unavailable at trial. Second, the evidence does not pertain to an element of any crime for which he was convicted, so this evidence could only be used to impeach the victim. Finally, Petitioner neglects to address the possibility that he had used the rented console to expose the victim to pornography. Such evidence cannot establish Petitioner's actual innocence.

Petitioner also submits letters from three potential new witness. One letter, from one of Petitioner's former co-workers, states that the writer "had never heard [Petitioner], or any person

at work bring up anything about a boy around [Petitioner] or his house." (ECF No. 2-1, at 8.) Petitioner also submits a letter from his former roommate who wrote

> In 2012 I was a roomate [sic] with [Petitioner] and I was living at his place for about 90 days. (I believe the timeline was about April until about June.) And during that time I never once saw [Petitioner] with any children at the apartment, and with me working the late shift I was home most of the day everyday [sic].

(ECF No. 2-1, at 9). The third letter was from a person Petitioner met in prison who claims to know the victim's family but claims no direct knowledge of the events at issue writes "I know that [Victim's mother] is a liar and uses her son for her own games. From reading [Victim's Aunt's] statement it like [sic] she was paid or coeresed [sic] to say what she said." (ECF No. 2-1, at 11.) These statements fail to establish Petitioner's actual innocence.

Petitioner argues that "EVERY juror would have a different outlook on this if those things I pointed out were presented them." (ECF No. 17, at 1) Petitioner is required to do far more than present evidence that would provide jurors with a new outlook. Petitioner must present reliable evidence of his factual innocence, which Petitioner fails to do. *See Frost v. Pryor*, 749 F.3d 1212, 1232 (10th Cir. 2014) ("Simply maintaining one's innocence, or even casting some doubt on witness credibility, does not necessarily satisfy th[e demanding *Schlup*] standard" for new evidence.); *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021) ("An actual innocence claim must be based on more than the petitioner's speculations and conjectures."). Further, petitioner must show that in light of the new evidence, "no reasonable juror would have found [him] guilty." *See Rose*, 194 F. App'x at 502 (quoting *Schlup*, 513 U.S. at 329). Petitioner presents no new evidence preventing a jury from finding him guilty. The Court thus rejects actual innocence as a basis for an equitable exception to the running of the period of limitation.

### 3. SUMMARY

Petitioner has not met his burden of showing that--during the running of the federal period of limitation and beyond—he faced extraordinary circumstances that stopped him from timely filing or that he took specific steps to "'diligently pursue his federal claims.'" *Id.* at 930. Nor has he shown actual innocence. Accordingly, equitable tolling does not apply here.

### III. CERTIFICATE OF APPEALABILITY

The Court next considers whether to issue a certificate of appealability (COA). *See* R.11, Rs. Governing § 2254 Cases in the United States District Courts ("The district court must issue or deny a [COA] when it enters a final order adverse to the applicant.").

When a habeas petition is denied on procedural grounds, as this one is, a petitioner is entitled to a COA only if he shows that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing 28 U.S.C.S. § 2253 (2023)). Petitioner has not made this showing.

### IV. CONCLUSION

Petitioner unjustifiably delayed filing his habeas-corpus petition until November 30, 2021, approximately four months past the limitation period's expiration. Petitioner has failed to establish that either equitable tolling or actual innocence applies to refresh his untimely filing.

**IT IS THEREFORE ORDERED** that Respondent's Motion to Dismiss is **GRANTED**. (ECF No. 14.) **IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**. This action is **CLOSED**.

DATED this 14th day of September, 2023.   BY THE COURT:

CHIEF JUDGE ROBERT J. SHELBY
United States District Court